UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAROY LINZY DAVIS, #368513,

        Petitioner,

v.

        Case Number 1:17-CV-11409
        Honorable Thomas L. Ludington

CONNIE HORTON,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

On May 16, 2001, Michigan prisoner Jaroy Linzy Davis ("Petitioner") was convicted of second-degree murder, MICH. COMP. LAWS § 750.317, assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Genesee County Circuit Court in 2001. He is currently serving sentences of 31 years 3 months to 50 years imprisonment on the murder conviction, a concurrent term of 18 years 9 months to 40 years imprisonment on the assault conviction, and a consecutive term of 2 years imprisonment on the felony firearm conviction.

Plaintiff has brought a habeas case pursuant to 28 U.S.C. § 2254. In his pleadings, Petitioner raises claims concerning a partial courtroom closure during jury voir dire and the effectiveness of his trial and appellate counsel. The petition for a writ of habeas corpus will be denied. A certificate of appealability will also be denied as well as leave to proceed in forma pauperis on appeal.

**I.**

Petitioner's convictions arise from the drive-by shooting death of a man in a residential area in Flint, Michigan in February 2001. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). It provides:

> The complainant, Richmond Lewis, testified that, during the early morning hours of February 18, 2001, he and his friend Herbert Cleaves, Jr., were in the parking lot of a club when Lewis saw defendants, who were looking at Lewis in a menacing manner. Defendants were in a white Lumina. Lewis had had a sexual relationship with the mother of Davis' child. Defendants followed Lewis and Cleaves out of the parking lot. Smith was driving and Davis was in the passenger's seat. At one point, defendants' car drove so close to Lewis' car that the two vehicles nearly touched. Lewis drove around town in an effort to lose defendants. Lewis finally parked his car at a location near his house so that defendants would not find out where he lived. Lewis and Cleaves jogged to Lewis' house. As Lewis started to unlock the front door of his house, defendants' white Lumina drove slowly down the street without headlights. The Lumina was followed by a Ford Explorer. When defendants' car was in front of the house, Lewis saw a gun pointed out of the passenger window of the Lumina. He heard shots, and he and Cleaves fell to the ground. Lewis was not injured, but Cleaves was fatally shot in the abdomen.

*People v. Davis*, No. 235212, 2003 WL 21186653, *1 (Mich. Ct. App. May 20, 2003) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, raising claims concerning the exclusion of Richard Lewis' criminal record, the prosecutor's discovery release delay, a limitation on rebuttal testimony, and the scoring of the sentencing guidelines. The court denied relief on those claims and affirmed Petitioner's convictions and sentences. *Id.* at *2-9. Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Davis*, 469 Mich. 944, 671 N.W.2d 48 (2003).

Petitioner then filed a federal habeas petition in this Court raising the same claims presented on direct appeal in the state courts, which was denied. *Davis v. Romanowski*, No. 04-

CV-71309, 2004 WL 7331214 (E.D. Mich. Dec. 16, 2004) (Duggan, J.). Petitioner attempted to appeal, but the United States Court of Appeals for the Sixth Circuit dismissed his appeal for lack of jurisdiction because his notice of appeal was untimely. *Davis v. Romanoski*, No. 05-1151, 2005 WL 8154546 (6th Cir. April 26, 2005). The United States Supreme Court denied a petition for writ of certiorari. *Davis v. Curtin*, 546 U.S. 984 (2005).

In February, 2014, Petitioner filed a motion for relief from judgment with the state trial court, raising claims concerning a partial closure of the courtroom during jury voir dire, the effectiveness of trial and appellate counsel as to that issue, the validity of his sentence on his assault with intent to commit murder conviction (which was originally 40 to 60 years imprisonment), and his actual innocence.

Petitioner's partial closure of the courtroom claim was based upon the fact that the trial court asked the public, other than the deceased victim's mother, to leave the courtroom so that prospective jurors could be seated in the courtroom for jury voir dire due to space limitations. *See* 5/8/01 Trial Tr. pp. 9-10. There was no objection. *Id*. Petitioner also filed affidavits from his mother and two siblings stating that they were present in the courtroom on May 8, 2001, that they had to leave the courtroom during jury voir dire, and that they would have otherwise remained in the courtroom for that proceeding. *See* Affid. of Janis Thorns, Javonka Thorns, and Johann Thorns (all dated Oct. 23, 2013), Attach. to Pet. Mot. for Relief from Judgm.

The trial court granted the motion as to the sentencing claim, but denied relief on the remaining claims pursuant to Michigan Court Rule 6.508(D)(3) finding that Petitioner had not shown good cause or actual prejudice for failing to raise the claims on direct appeal, had not presented newly-discovered evidence of his actual innocence so as to waive those requirements, and had not shown that appellate counsel was ineffective. *People v. Davis*, No. 01-7622-FC

(Genesee Co. Cir. Ct. July 28, 2014).  The trial court subsequently re-sentenced Petitioner to 18 years 9 months to 40 years imprisonment on the assault with intent to murder conviction. Petitioner then filed an application for leave to appeal with the Michigan Court of Appeals, raising claims concerning the partial closure of the courtroom during jury voir dire and the effectiveness of trial and appellate counsel, which was denied pursuant to Michigan Court Rule 6.508(D)(3). *People v. Davis*, No. 325759 (Mich. Ct. App. May 28, 2015).  Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Davis*, 499 Mich. 914, 877 N.W.2d 724 (2016).

Petitioner thereafter filed his federal habeas petition raising claims concerning the partial closure of the courtroom during jury voir dire and the effectiveness of trial and appellate counsel with respect to that issue.  Respondent has filed an answer to the habeas petition contending that it should be denied because the first two claims are procedurally defaulted and all of the claims lack merit.  Petitioner has filed a reply to that answer.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions.  The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

### III.

### A.

As an initial matter, Respondent contends that Petitioner's first two habeas claims concerning the partial closure of the courtroom during jury voir dire and the effectiveness of trial counsel relative to that issue are barred by procedural default because Petitioner first raised those claims in the state courts on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D)(3).

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last explained state court ruling is used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

Petitioner first presented his claim of partial courtroom closure and related ineffective assistance of trial counsel claim to the state courts in his motion for relief from judgment and related appeals. The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. *See* MICH. CT. R. 6.508(D)(3). The United States Court of Appeals

for the Sixth Circuit has held that the form order used by the Michigan Supreme Court to deny leave to appeal lacks necessary explanation for habeas review. Consequently, the Court must "look through" the unexplained orders of the Michigan Supreme Court to the lower court decisions to determine the basis for the denial of state post-conviction relief. *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).

In this case, both the Michigan Court of Appeals and the state trial court denied relief on procedural grounds. They ruled that Petitioner had not shown good cause and actual prejudice under Michigan Court Rule 6.508(D)(3) for his failure to raise the claims on direct appeal of his convictions and that he had not shown that those requirements should be waived due to his actual innocence. The state courts thus clearly relied upon a procedural default to deny Petitioner relief on these claims. Accordingly, Petitioner's first two claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his or her ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his procedural default. The Sixth Amendment to the United States Constitution guarantees a criminal

defendant the right to the effective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id*.

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceeding. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas

review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the … goal of vigorous and effective advocacy …. Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial claims on direct appeal, including claims concerning the exclusion of Richard Lewis' criminal record, the prosecutor's discovery

release delay, a limitation on rebuttal testimony, and the scoring of the sentencing guidelines. Such claims, while not successful, were nonetheless reasonable and constituted sound advocacy.

Additionally, appellate counsel may have not raised claims regarding the partial closure of the courtroom during jury voir dire and trial counsel's lack of objection claims because the Supreme Court had not yet ruled that a defendant's Sixth Amendment right to a public trial extends to jury voir dire. The Supreme Court first did so in *Presley v. Georgia*, 558 U.S. 209 (2010), which was decided several years after the conclusion of Petitioner's direct appeal. *See Woodson v. Hutchinson*, 52 F. App'x 195, 198 (5th Cir. 2002) (ruling that petitioner's attorneys could reasonably have questioned whether he had a constitutional right to an open courtroom during jury voir dire where the Supreme Court had not yet applied the public trial right of the Sixth Amendment to jury selection); *Riggins v. Rivard*, No. 09-CV-13144, 2015 WL 2185901, *8 (E.D. Mich. May 11, 2015) (stating that "it was unclear whether the Sixth Amendment public trial right applied to the voir dire process" at the time of the petitioner's 2006 trial); *Christian v. Hoffner*, No. 13-CV-11491, 2014 WL 5847600, *8 (E.D. Mich. Nov. 12, 2014) (finding that there was "some question" as to whether the Sixth Amendment public trial right applied to jury voir dire before *Presley* was decided and ruling that trial counsel was not ineffective for failing to object to a jury voir dire courtroom closure which predated *Presley*).

Similarly, appellate counsel may have not raised the issues on direct appeal because the courtroom closure was only a partial one (the deceased victim's mother remained in the courtroom during jury voir dire, *see* 5/8/01 Trial Tr. p. 10) and Supreme Court cases had involved complete courtroom closures. *See, e.g., Waller v. Georgia*, 467 U.S. 39 (1984) (ruling that the complete exclusion of the public from the courtroom during a suppression hearing was unjustified and identifying four factors a court should consider before closing a courtroom to the public); *Press-*

*Enterprise Co. v. Superior Ct. of Calif.*, 464 U.S. 501, 512 (1984) (ruling that exclusion of all press and public from jury voir dire during rape trial violated First Amendment right of public access); *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596 (1982) (complete exclusion of press and public from courtroom during criminal trial). One case stated that when a limited disclosure is ordered, "the constitutional values sought to be protected by holding open proceedings may be satisfied later by making a transcript of the closed proceedings available within a reasonable time." *Press-Enterprise Co.*, 464 U.S. at 512. *See Drummond v. Houk*, 797 F.3d 400, 403 (6th Cir. 2015) (stating that "there is no clearly established Supreme Court law as to how the rules in *Waller* apply in cases, like Petitioner's, where some spectators, but not all of them, were removed from the courtroom"); *Bickham v. Winn*, No. 2:14-CV-14560, 2016 WL 3902746, *7 (E.D. Mich. June 19, 2016) (discussing *Drummond* and indicating that clearly established Supreme Court law only applies to full courtroom closures), *aff'd.*, 888 F.3d 248 (6th Cir. 2018). In this case, the courtroom closure was partial and a transcript of the jury voir dire was available at the time of trial and appeal.

Appellate counsel may have also determined that raising the partial courtroom closure during jury voir dire issue on appeal would be futile because trial counsel did not object to the closure at the time of trial, thereby waiving that issue. *See Weaver v. Massachusetts*, _ U.S. _, 137 S. Ct. 1899, 1910-11 (2017) ; *Peretz v. United States*, 501 U.S. 923, 936-37 (1991); *Bickham*, 888 F.3d at 251-52 (citing cases and discussing contemporaneous objection rule and waiver of public trial right); *Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009) (citing *Freytag v. Comm'r*, 501 U.S. 868, 896 (1991)); *see also People v. Smith*, 90 Mich. App. 20, 282 N.W.2d 227 (1979) (ruling that a defendant may waive the right to a public trial expressly or by failing to timely object at trial).

Appellate counsel may have similarly decided not to raise the related ineffective assistance of trial counsel claim on appeal because he could not show that trial counsel was deficient for not objecting to the partial courtroom closure and/or that Petitioner was prejudiced by trial counsel's conduct as required under *Strickland*.  As to trial counsel's performance, appellate counsel may have believed that trial counsel made a strategic decision not to object to the closure because it was done due to space limitations, there were no reasonable alternatives, it would not affect the defense case, and/or he did not want to antagonize the judge.  *See, e.g., Johnson v. Sherry*, 465 F. App'x 477, 481 (6th Cir. 2012) (denying habeas relief on similar ineffective assistance of trial counsel claim, explaining that counsel "apparently weighed the minimal benefits against the significant costs of objecting to the closure, and then decided against it.  The Constitution permitted him that choice."); *Bucci v. United States*, 662 F.3d 18, 32 (1st Cir. 2011) (ruling that competent counsel could reasonably conclude that even a successful challenge to a partial courtroom closure would do little to increase the chance of acquittal).  Appellate counsel may have also believed that trial counsel did not object to the closure because he thought that jurors would be more forthcoming with fewer people in the courtroom.  *See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 559-60 (1980); *United States v. Koubriti*, 252 F. Supp. 2d 424, 431 (E.D. Mich. 2003).

As to prejudice, appellate counsel may have reasonably determined that he could not show that Petitioner was prejudiced by trial counsel's lack of objection to the partial courtroom closure during jury voir dire because such conduct was not outcome determinative.  *See Weaver*, 137 S. Ct. at 1912-13 (rejecting argument that, because an improper courtroom closure is a structural error, prejudice for purposes of an ineffective assistance of counsel claim is presumed and, instead, ruling that a petitioner is required to show a reasonable probability of a different outcome

but for counsel's failure to object). To be sure, a review of the record reveals that the parties conducted a lengthy jury voir dire and defense counsel expressed satisfaction with the selected jury, *see* 5/8/01 Trial Tr. pp. 10-165, that the prosecution presented significant evidence of Petitioner's guilt at trial, particularly the testimony of the surviving shooting victim, and that there is no indication that the partial courtroom closure affected the fundamental fairness of the trial or the outcome at trial.

Furthermore, even if appellate counsel erred, Petitioner cannot show that he was prejudiced by appellate counsel's conduct (to establish prejudice to excuse the procedural default) as he fails to show that the result of his direct appeal would have been different. As discussed above, his claim regarding the partial courtroom closure during jury voir dire was waived by the lack of objection at the time of trial. His underlying ineffective assistance of trial counsel claim lacks merit because Petitioner fails to show that trial counsel was deficient or erred and that he was prejudiced by counsel's conduct. Petitioner thus fails to establish that appellate counsel was ineffective under the *Strickland* standard. Consequently, Petitioner fails to establish cause and prejudice to excuse his procedural default.

Petitioner also fails to demonstrate that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim requires a petitioner to provide new, reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner makes no such showing. While he cites affidavits from Laron Burn and Defan Pringle, which indicate that a man named Shelton Golden may have been responsible for the shooting at issue, he fails to show that those affidavits are newly-discovered (in that they contain information that could not have been obtained at the time of trial or direct appeal) and/or that they constitute reliable evidence of his actual innocence. To be sure, as discussed by the trial court in denying Petitioner's motion for relief from judgment on these issues, Laron Burn testified at trial and when he was asked if he knew who shot the victims, he was precluded from answering based upon a defense objection. Petitioner fails to sufficiently explain why he was unable to obtain information from Laron Burns or Defan Pringle at the time of his trial or direct appeal.

Moreover, both of the affidavits are inherently suspect and unreliable, having been signed more than 12 years after the incident and the trial and 10 years after the conclusion of direct appeal. *See, e.g., Schlup*, 513 U.S. at 331; *Freeman v. Trombley*, 483 F. App'x 51, 59-60 (6th Cir. 2012) (discounting credibility of girlfriend's alibi affidavit submitted long after petitioner's trial); *Lewis v. Smith*, 110 F. App'x 351, 355 (6th Cir. 2004) (district court properly rejected as suspicious a recanting affidavit made two years after trial). Such statements are viewed with "a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring); *Harris v. Smith*, No. 2:12-CV-14210, 2013 WL 3873168, *5 (E.D. Mich. July 25, 2013) ("Long delayed statements are viewed with extreme suspicion."); *see also McQuiggan v. Perkins*, 569 U.S. 383, 387 (2013) (stating that a court should consider "unjustifiable delay on a habeas petitioner's part . . . as a factor in determining whether actual innocence has been reliably shown"). Both affidavits also consist of hearsay statements and do not provide direct evidence of Petitioner's innocence. Hearsay is presumptively unreliable and insufficient to establish actual innocence. *See Bell v. Howes*, 701 F. App'x, 408, 412 (6th Cir. 2017) (citing *Herrera v. Collins*,

506 U.S. 390, 417 (1993)); *Knickerbocker v. Wolfenbarger*, 212 F. App'x 426, 433 (6th Cir. 2007).

Lastly, the Court notes that Petitioner's own self-serving, conclusory assertions of innocence are insufficient to support his actual innocence claim. "A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause." *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) (citing cases). Petitioner fails to show that he is actually innocent. His habeas claims concerning the partial closure of the courtroom during jury voir dire and the effectiveness of trial counsel are thus barred by procedural default and do not warrant habeas relief.

**B.**

Petitioner also raises an independent claim that appellate counsel was ineffective for failing to raise the foregoing two claims on direct appeal in the state courts. Respondent contends that this claim lacks merit.

The state trial court denied relief on this claim on collateral review, finding that Petitioner failed to establish that appellate counsel erred or that he was prejudiced by counsel's conduct. *See Davis*, No. 01-7622-FC at *4-7. The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The ineffective assistance of appellate counsel claim, while not itself procedurally defaulted, nonetheless lacks merit. As discussed *supra*, Petitioner has failed to establish that appellate counsel was ineffective under the *Strickland* standard. More importantly, for purposes of habeas review, this Court cannot conclude that the state court's determination to that effect was unreasonable. Habeas relief is not warranted on this claim.

### IV.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a court denies relief on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Id.* In this case, jurists of reason could not debate the correctness of the Court's procedural ruling as to the partial courtroom closure during jury voir dire the ineffective assistance of trial counsel claims and that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his ineffective assistance of appellate counsel claim. Lastly, the Court concludes that an appeal from this decision cannot be taken in good faith. *See* FED. R. APP. P. 24(a).

Accordingly, it is **ORDERED** that Petitioner's petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

It is further **ORDERED** that a certificate of appealability and permission to appeal in forma pauperis are **DENIED**.

Dated: May 4, 2020                              s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Jaroy Davis** #368513, CHIPPEWA CORRECTIONAL FACILITY, 4269 W. M-80, KINCHELOE, MI 49784 by first class U.S. mail on May 4, 2020.

                                              s/Kelly Winslow
                                              KELLY WINSLOW, Case Manager